CHARLES L. DAKAN, Administrator, etc., Respondent, v. UNION MUTUAL LIFE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, May 20, 1907.

1. **INSURANCE: Paper Attached to Policy: Construction.** The paper attached to and delivered with an insurance policy is prima facie a part thereof though the policy does not refer thereto: but where it can add nothing to the policy without an

interpretation conflicting with the, terms thereof, it may not be considered as a part thereof.

2. ———: ———: ———: **Life of Policy.** *Held*, that a table annexed to a policy for the purpose of imparting information to the policy holder as to the value in years by the number of premiums paid, meant that the payment of six premiums fixed the life of the policy, at eleven years and not at seventeen years.

3. ———: **Evidence: Competency of Wife: Interpretation of Contract.** The wife is not competent to state the conversations she had with her deceased husband; and evidence of one party's interpretation of a contract is not permissible to prove its meaning, especially where the contract is unambiguous.

Appeal from Gentry Circuit Court.—*Hon. William C. Ellison,* Judge.

REVERSED.

*Everett W. Patterson* and *J. W. Peery* for appellant.

(1) The table in question does not form a part of the policy. 1 Wood on Fire Insurance (2 Ed.), sec. 61 p. 167; 1 May on Insurance, sec. 29A; 1 Beach on Insurance, sec. 517; Kingsley v. Insurance Co., 8 Cush. (Mass.) 403; Insurance Co. v. Rowland, 66 Md. 240; Stone v. Casualty Co., 34 N. J. L. 376; Insurance Co. v. Harmer, 2 Oh. St. 452, 59 Am. Dec. 694; Vilas v. Insurance Co., 72 N. Y. 590, 28 Am. Rep. 186; Drug Store v. Insurance Co., 44 S. W. 21, 24; Goddard v. Insurance Co., 67 Tex. 71; McQuitty v. Insurance Co., 15 R. I. 576; Fabyan v. Insurance Co., 33 N. H. 203; Aid Soc. v. Kinter, 12 Week. Not. Cas. (Pa.) 76; Railway Co. v. Levy, 17 Mo. App. 501; Haddaway v. Post, 35 Mo. App. 278; Johnson County v. Wood, 84 Mo. 489. (2) The purpose of the table is to illustrate the working of the Maine non-forfeiture law. Insurance Co. v. Adler, 73 N. E. 835. As instances of wording where the extended term is shown, see Spencer v. Insurance Co., 112

Mo. App. 86; Moore v. Insurance Co., 112 Mo. App. 696, 701; Drury v. Insurance Co., 74 S. W. 664; Insurance Co. v. Meinken, 81 S. W. 175. (3) Such an interpretation must be placed on the table as will make it harmonize with the body of the policy. McCullock v. Holmes, 111 Mo. 445; Ellerbe v. Barney, 119 Mo. 632; Shickle v. Chouteau, 10 Mo. App. 241, 84 Mo. 161; Webb v. Insurance Co., 14 Mo. 3; Calloway v. Henderson, 130 Mo. 77, 86; Hanna v. Land Co., 126 Mo. 1; Senor v. Insurance Co., 181 Mo. 104, 112; Ijams v. Life Assn., 185 Mo. 466; Ford v. Mut. Accident Co., 148 Mass. 153; Holly v. Insurance Co., 105 N. Y. 444; Insurance Co. v. Bank, 59 S. W. 1. (4) The statute of Maine forms a part of the contract. State ex rel. v. Railway Co., 153 Mo. 164; State ex rel. v. Rubber Mfg. Co., 149 Mo. 212; Pfaff v. Gruen, 92 Mo. App. 566; Ritchey v. Insurance Co., 104 Mo. App. 150; Bank v. Salmon, 117 Mo. App. 511; Capp v. Insurance Co., 117 Mo. App. 532; Neilson v. Sav. L. Assn., 139 Cal. 337, 340. And if there is any conflict the statute must govern. Ritchey v. Insurance Co., 104 Mo. App. 150; Schell v. Equitable Loan Ass'n, 150 Mo. 110. Also cases cited next supra. The Missouri statute does not apply. R. S. 1899, sec. 7900. (5) The court below erred in admitting the table in evidence. The evidence of plaintiff as to her husband's reliance on his construction of the table was improperly admitted. R. S. 1899, sec. 4656; Herndon v. Triple Alliance, 45 Mo. App. 430; State v. Kodat, 158 Mo. 125, and numerous other decisions of the Missouri Courts.

*Ed E. Aleshire* and *John Showen* for respondent.

(1) Table referred to a part of the policy. Murdock v. Insurance Co., 2 N. Y. 210; Roberts v. Insurance Co., 3 Hill 501; Snyder v. Insurance Co., 13 Wendling, 94; McLaughlin v. Insurance Co., 57 Maine 170; May on Insurance, sec. 158; 1 Joyce on Insurance, sec. 186; Duncan v. Insurance Co., 6 Wend. (N. Y.) 488.

(2) The table, when properly read, said to the insured, "when you have paid six annual premiums, your insurance is then made good for the future to the extent of eleven years and two hundred and eighty-eight days."

BROADDUS, P. J.—This is a suit upon a policy issued by defendant on the eleventh day of November, 1887, by the terms of which defendant agreed to pay to Andrew Whiteford at its office in Portland, Maine, in the year 1893, the sum of two thousand and five hundred dollars, or in case of his death before that time to pay the same to Eliza Whiteford in the event she survived him, and, if not, then to his personal representatives or assigns. The insured, Andrew Whiteford, died in the county of Gentry on the fourth day of August, 1900. Suit was instituted on the policy by the said Eliza in September, 1905, since which she also died intestate and the cause was revived in the name of the plaintiff as administrator.

The annual premium to be paid on said policy of insurance was $75.85. During his life the assured paid six of these annual premiums. By the terms of the policy the application of the assured was made a part thereof. The policy was issued under the Maine Non-Forfeiture Law. For the purposes of the case, it is only necessary to call attention to certain portions of the policy, viz.:

"That the annual premium of seventy-five dollars and eighty-five cents shall be paid on delivery of this policy and thereafter on the fifteenth day of November in every year during the continuance of this policy, at the Home Office." "Surplus will be apportioned to this policy only at the expiration of five years from its anniversary date, and annually thereafter and then only if the policy is in full force by the payment of premiums. Such apportionment will be made in the form of reversionary additions, but the value of the same may, at the

option of the insured, be applied to the reduction of the sixth and subsequent premiums. When thus applied, the receipt of the insured shall be a valid release to the company. But if this policy becomes a claim within five years from its date, and it is in full force by the payment of premiums, the company will pay a mortuary dividend equal to fifty per cent of the amount of premiums previously paid hereon." "That after the payment of three full years' premiums in cash, this policy is entitled to the benefits of the Maine Non-Forfeiture Law, and if this policy shall become entitled to extension under said law, the present value of any reversionary additions standing to its credit shall be used to further extend the original amount of this policy."

Section 91 of the Maine Non-Forfeiture Law provides that the "Net value of the policy, when the premium becomes due, and is not paid, shall be ascertained according to the combined experience or actuaries' rate of mortality, with interest at the rate of four per cent a year; from such net value, there shall be deducted the present value of the differences between the future premiums named in the policy and the future net premiums on said policy, ascertained according to the rates of mortality and interest aforesaid, in no event, however, to exceed one-fourth of said net value, and in ascertaining said net value, . . . what remains . . . shall be considered as a net single premium of temporary insurance."

Section 92 of that law substantially provides that if death occurs within the term of temporary insurance covered by the value of the policy as determined in the preceding section, the company shall pay the amount of the policy as if there had been no lapse of the premium. But it is also provided that the company may deduct from the amount insured in the policy the amount compounded at seven per cent. a year, of the ordinary life premiums at age of issue, that had been

forborne at the time of the death, including the whole year's premium in which the death occurs, not exceeding five in number.

The following table was printed upon the back of the policy:

| Annual Premiums Paid Before Lapse. | Maine Non-Forfeiture Law. Insurance Under This Policy Secured For Years | Cash Due at End Of Endowment if Insured Lives. |
|---|---|---|
| | | Days. |
| 3 | 6 | 66 |
| 4 | 8 | 50 |
| 5 | 9 | 363 |
| 6 | 11 | 288 |
| 7 | 13 | 180 |
| 8 | 15 | 43 |
| 9 | 16 | 241 |
| 10 | 18 | 47 |
| 11 | 19 | 192 |
| 12 | 20 | 313 |
| 13 | 22 | 45 |
| 14 | 23 | 124 |
| 15 | 24 | 182 |
| 16 | 25 | 220 |
| 17 | 26 | 243 |
| 18 | 27 | 251 |
| 19 | 28 | 269 |
| 20 | 29 | 352 |
| 21 | 31 | 50 |
| 22 | 32 | 98 |
| 23 | 33 | 131 |
| 24 | 34 | 151 |
| 25 | 35 | 160 |
| 26 | 36 | 158 |
| 27 | 37 | 148 |
| 28 | 38 | 131 |
| 29 | 39 | 107 |
| 30 | 40 | 78 |

Dakan v. Insurance Co.

It was admitted that the policy was delivered to the insured in the State of Missouri, where he resided. The court admitted over the objection of the defendant evidence that Mrs. Whiteford, if present, would testify that the reason that her husband, the assured, did not pay more than the six annual payments was that he believed that the six paid would extend the policy and keep it in force for eleven years and two hundred and eighty-eight days from November, 1893. At the close of plaintiff's case the defendant interposed a demurrer to his evidence, which the court overruled.

It was then agreed that by the computation of the actuary under the Maine Non-Forfeiture Law that the premiums paid by the assured, together with the reversionary additions, would have extended and kept in force the policy for five years and three hundred and thirty-nine days from November 13, 1893, the date of the last premium paid. Or, in other words, the payment by the assured of six annual premiums secured him a policy for the term of eleven years and three hundred, thirty-nine days. There is no dispute as to the facts, but the controversy is over the question whether the table endorsed on the back of the policy is to be taken as a part of the contract of insurance, and, if so, what construction it should receive.

There is no reference to the table in the policy itself as there is to the application, which expressly makes it a part of the contract. Notwithstanding this omission in the policy, it should be construed in connection therewith if it served any purpose in the way of elucidating the terms of the contract, or contained any further stipulations. "A paper purporting to be conditions of insurance if annexed to and delivered with a fire policy, is deemed to be prima facie a part of it, although the policy does not contain any express reference to such paper." [Murdock v. Insurance Co., 2 Comstock 210; Roberts v. Insurance Co., 3 Hill 501.]

It will be seen that the decisions are predicated upon the ground that such papers contain contractual conditions. And to the same effect is the case of Duncan v. Insurance Co., 6 Wend. 489, where it is held: "The proposals and conditions attached to the policy form a part of the contract and have the same force and effect as if contained in the body of the policy." The contract in the case at bar seems to be complete within itself and we cannot see in what way the contract could be enlarged by the table in question unless we give to it the interpretation put upon it by the plaintiff, which would have the effect, as will be seen farther on in the opinion, to be in conflict with the terms of the policy.

It will be observed by reference to said table that the payment of six annual premiums secures a policy for eleven years and two hundred and eighty-eight days. The words at the head of the column are, "Maine Non-Forfeiture Law Insurance Under This Policy Secured For;" then follows the number of years and days the different payments of annual premiums will secure insurance, the number of premiums securing the terms of insurance appearing opposite in the first column, which is headed, "Annual Premiums Paid Before Lapse." Applying the table to this case the plaintiff contends that it means that the six annual payments made by the assured had the effect of continuing the policy in force eleven years and two hundred, eighty-eight days, which would make the life of the policy seventeen years, two hundred, eighty-eight days, and, if true, the policy had not lapsed at the death of the assured.

If such is a proper construction of the meaning of the table, it is in conflict with the conditions of the policy. There is no ambiguity in the contract, and the policy provides that the manner of ascertaining in such cases the term of extended insurance is to be determined by the "Maine Non-Forfeiture Law." The actuaries' computation made in compliance with said law, as we

have seen, extended the policy only for the period of five years and three hundred and thirty-nine days, or secured a policy to the assured for the term of eleven years, three hundred, thirty-nine days instead of seventeen years and two hundred, eighty-eight days, as plaintiff contends is provided for in the table. It would be opposed to every reasonable rule of construction to hold that the table in question, which is not referred to in the contract, should have the effect of annulling a plain and specific stipulation in the policy. In such a case, the endorsement of the table on the back of the policy, not being referred to, cannot be regarded as a part of the contract. [May on Insurance, sec. 158.]

But, conceding that the table should be considered as a part of the policy, should the interpretation of its meaning as contended for by plaintiff be accepted? We think not, for the most obvious reason that it does not say nor mean that the term of the policy was to be extended eleven years and two hundred, eighty-eight days from the payment of the last premium. But it does say that, "Insurance Under This Policy Secured For, 11 years and 288 days." That is to say, the life of the policy was eleven years, two hundred and eighty-eight days, and not seventeen years and two hundred, eighty-eight days. It seems that the purpose of the table was to impart information to the policy holder. He could by consulting it know at any given time its value in years by the number of annual premiums he had paid.

The evidence that the reason the assured did not pay any further premiums because he considered that those already paid would extend the life of the policy to seventeen years and two hundred, eighty-eight days was not competent for any purpose. The wife is not a competent witness to state conversations she has had with her husband. And the interpretation placed upon a contract by one of the parties is not permissible to

prove its meaning. And furthermore, the contract was not ambiguous, but was complete and unambiguous.

For the reasons given the cause is reversed. All concur.